


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   Case No. 08-CR-128

ARTHUR POLK,

    Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Michelle L. Jacobs, Acting United States Attorney for the Eastern District of Wisconsin, and Jonathan H. Koenig, Assistant United States Attorney, and the defendant, Arthur Polk, individually and by attorney Franklyn Gimbel, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in a one-count indictment that alleges a felony violation of Title 18, United States Code, Section 641 and in an information that alleges a violation of Title 18, United States Code, Sections 1853 and 2.

3.     The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

### THE UNITED STATES ATTORNEY CHARGES:

*That in or about December of 2003, in the State and Eastern District of Wisconsin and elsewhere,*

### ARTHUR POLK

*unlawfully cut and destroyed trees growing, standing, and being upon land of the United States which, in pursuance of law, had been reserved and purchased by the United States for a public use; to wit, approximately 457 acres of land in Township Fifteen (15) North, Range Ten (10) East, Fourth Principal Meridian, Town of Montello, Marquette County, Wisconsin that were subject to a conservation easement in favor of the United States.*

*All in violation of Title 18, United States Code, Sections 1853 & 2.*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

Background

The Wetlands Reserve Program ("WRP") is administered by the U.S. Department of Agriculture's ("USDA") Natural Resources Conservation Service ("NRCS"). Among other things, the program provides landowners with financial incentives to restore, protect, and enhance wetlands. As part of the program, landowners are paid for easement rights to their land in perpetuity. Landowners participating in the WRP control access to the land in the easement and may sell their property (so long as they disclose the existence of the easement). In addition, they may use (or lease) the land for hunting, fishing, and other recreational activities. However, the easement agreement

2

prohibits certain other activities, such as harvesting wood products, cutting hay, or grazing livestock, unless they are first approved as "compatible" by the NRCS.

Duffy's Marsh

Duffy's Marsh is a 1700-acre freshwater marsh in Marquette County. Prior to being restored as a wetland, it had been drained and used as cropland for four decades. Appreciating the value of wetlands as habitat for wild animals and especially birds, the landowners surrounding the marsh joined the WRP (voluntarily) and granted permanent conservation easements to the government in exchange for cash payments. Payments reflected the value of the land, including the loss of its use for agricultural purposes.

Among the landowners who joined the WRP's Duffy's Marsh project were Arthur Polk and his wife. In 1996, they executed a warranty easement deed giving NRCS permanent easement rights to restore, protect, manage, maintain and enhance 457 acres of their land in the marsh. In exchange, they received $231,293.57. The terms of the easement reserve certain rights to the Polks, including record title (and the right to convey the property, subject to the easement), the right to quiet enjoyment, control of access, the right to "undeveloped" recreational uses such as hunting and fishing, and subsurface mining rights. The easement confers upon the government the right to engage in certain other activities, including the harvesting of wood products, and states that such activities "are prohibited of the landowner on the easement area." However, the easement also provides that the NRCS may authorize, in writing, a landowner's use of the easement area for "compatible" economic uses, including managed timber harvest, if such uses are deemed by NRCS "consistent with the long-term protection and enhancement of the wetland and other natural values of the easement area."

Polk was an active participant in the Duffy's Marsh project and attended meetings in 1997 and again in 2001 where the requirement of obtaining a "compatible use permit" for any vegetation management was reviewed. A letter to Polk in early 2001 also emphasized this requirement as follows:

> This letter is your notification of the need to request and receive written authorization for any compatible use activities on your WRP easement area. A compatible use can be defined as any activity that impacts vegetation or hydrology (positive or negative). A compatible use authorization is required prior to engaging in *any* activity not reserved to the landowner under the terms of the WRP Warranty Easement Deed. . . . If you desire to engage in any . . . activities on the easement area [other than those reserved to the landowner], you must request authorization from the NRCS.

The same requirement was also addressed in a WRP newsletter sent to landowners in May of 2002.

3

Discovery and Investigation of Felled Trees on Easement Area of Polk's Land

On March 1, 2004, while working on nest boxes in Duffy's Marsh, Gregory Kidd, an NRCS biologist, discovered that trees had been cut on the easement area of the Polks' land. He could observe tire tracks and logs stacked in a pile. He went back two days later to take photographs and determined that approximately 100 trees had been cut. Kidd's discovery triggered an investigation by NRCS and eventually the USDA's Office of Inspector General.

The WRP employee who worked most closely with Polk was Alison Pena. She met with Polk and other landowners in 1995 to review the terms of the conservation easements and worked with the Polks in reviewing their easement deed before it was recorded. Pena states that Polk has never requested a compatible use permit or asked to harvest trees on the easement area of his land.

A former WRP participant in the area told investigators that he saw several trees cut and hauled out of Polk's easement area between January and March 2004. He related that Polk had told him he had the trees cut by a local contractor and that "as long as he [was] paying the taxes on the property, he [could] do whatever he wanted to do...."

An employee of the contractor confirmed that between January and March 2004, Polk had asked him to cut some trees for him as a favor (Polk had apparently allowed the contractor to use his property so that the contractor could access a worksite on adjacent land). The employee of the contractor stated that Polk told him he owned the land and pointed out which trees he wanted cut. He recalled taking about half of the felled trees to be burned and leaving the other half on site. Polk did not pay for removal of the trees.

Polk admits that in approximately December of 2003 he had the contractor cut trees from the easement area of his property. He also admits that he did not seek written permission from NRCS to have the trees cut. According to Polk, the trees felled were cottonwood trees that he wanted removed because they are "dirty seeding trees."

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

4

Case 2:08-cr-00128-WEC   Filed 05/27/09   Page 4 of 14   Document 12

## PENALTIES

6.      The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 1 year and $100,000. The offense also carries a mandatory special assessment of $25.00, and a maximum of one year of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF INDICTMENT

8.      The government agrees to move to dismiss the indictment at the time of sentencing.

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charge of cutting and destroying trees, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant intentionally cut or destroyed any tree;

Second, the tree was growing, standing or being upon any land of the United States which, in pursuance of law, had been reserved or purchased by the United States for a public use.

## SENTENCING PROVISIONS

10.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before

5

the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the

Case 2:08-cr-00128-WEC    Filed 05/27/09    Page 6 of 14    Document 12

defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged is **6** under Sentencing Guidelines Manual §2B1.1.

### Specific Offense Characteristics

17. The parties acknowledge and understand that the government will recommend to the sentencing court that a **4**-level increase under Sentencing Guidelines Manual § 2B1.1(b)(1)(C) is applicable to the offense level for the offense charged because the amount of loss was more than $10,000. The parties acknowledge and understand that the defendant will not join in this recommendation.

### Role in the Offense

18. Pursuant to Sentencing Guidelines Manual § 3B1.1/ 3B1.2, the parties agree to recommend to the sentencing court that no adjustment be given for an aggravating or mitigating role in the offense.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not

7

limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court. If the defendant's ultimate guideline range falls within either Zone A or Zone B of the sentencing table, and provided that the Presentence Report does not reveal any material or substantial aggravating factors not known to the government as of the date of this agreement (as reflected in the discovery materials, bond study and court record), the government further agrees to recommend a sentence of probation in accordance with Sentencing Guidelines Manual § 5C1.1(b) & 5C1.1(c)(3).

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

25. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

### Fine

26. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $25 prior to or at the time of sentencing.

### Restitution

28. The defendant agrees to pay restitution at or before sentencing in the amount of $8,000 to the following:

United States Department of Agriculture
Natural Resources Conservation Service
8030 Excelsior Drive Suite 200

9

Madison, WI 53717

## **DEFENDANT'S WAIVER OF RIGHTS**

29. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

32. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

33. By entering this agreement, the defendant admits that he failed to obtain the required written authorization from the NRCS prior to having the trees on his land felled. The defendant further acknowledges that a written compatible use authorization is required prior to engaging in any activity not reserved to the landowner under the terms of the WRP Warranty Easement Deed. Thus,

11

in the future, if the defendant desires to engage in any activities on the conservation easement area other than those specifically reserved to the landowner, he acknowledges and agrees that he must first request written authorization from the NRCS State Conservationist

### GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any

charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

39. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5/23/09

ARTHUR POLK
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5/23/09

FRANKLYN GIMBEL
Attorney for Defendant

For the United States of America:

Date: 5/23/2009

MICHELLE L. JACOBS
Acting United States Attorney

Date: 5/26/09

JONATHAN H. KOENIG
Assistant United States Attorney